## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LUIS ALBERTO PENA and
JAMES EUGENE AVERY,

      Plaintiffs,

v.

                                    Case No. 2:24-cv-00960-MIS-GBW

DEBBIE ANTONETTE VASQUEZ,
UNITED STATES OF AMERICA, and
BLANCA E. JIMINEZ,

      Defendants,

and

PERMANENT GENERAL ASSURANCE
CORPORATION,

      Plaintiff-in-Intervention,

v.

LUIS ALBERTO PENA,
JAMES EUGENE AVERY,
DEBBIE ANTONETTE VASQUEZ,
UNITED STATES OF AMERICA, and
BLANCA E. JIMINEZ,

      Defendants-in-Intervention.

### ORDER DENYING UNITED STATES' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**THIS MATTER** is before the Court on the United States of America ("Government")'s Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion"), ECF No. 58, filed August 20, 2025.  Plaintiffs Luis Alberto Pena ("Mr. Pena") and James Eugene Avery ("Mr. Avery," and collectively, "Plaintiffs") filed a Response on September 3, 2025 ("Response"), ECF No. 63, to which the Government filed a Reply on September 16, 2025 ("Reply"), ECF No. 65.  The Court

ordered Plaintiffs to submit a Surresponse, see ECF No. 67, which Plaintiffs filed on September 26, 2025, ECF No. 68.  Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Government's Motion.

## I.    Background

On January 6, 2023, two motor vehicle accidents occurred consecutively on eastbound U.S. Highway 70 near Las Cruces, New Mexico.  See N.M. Uniform Crash Reports, ECF No. 63-5 at 3-10.  The first accident involved Defendant Debbie Antonette Vasquez and federal employee Todd Rice, who was driving a vehicle in the course of his employment with the United States Department of the Army ("Army").  See id. at 7-8; Mot. at 2-3.

The second accident involved Plaintiffs and Defendant Blanca Jiminez.  See id. at 3-5.  Ms. Jiminez was driving behind the Army vehicle, and Plaintiffs were driving behind Ms. Jiminez.[1] See id. at 5.  When the first accident occurred, an object fell off the Army vehicle.  See id.  Ms. Jiminez swerved onto the shoulder and was hit from behind by Plaintiffs' vehicle.  See id.

On May 4, 2023, both Plaintiffs submitted administrative Claims for Damage, Injury, or Death on a Standard Form 95 ("SF-95") though counsel to the Office of the Staff Judge Advocate at the U.S. Army White Sands Missile Range.  See Pena SF-95, ECF No. 58-1; Avery SF-95, ECF No. 58-4.  The SF-95s indicate that the accident occurred on Friday, January 6, 2023 at 12:46 PM. ECF Nos. 58-1 at 1, 58-4 at 1.  The "Basis of Claim" in Mr. Pena's SF-95 states:

> Vehicle #1 (not my client) was traveling E. bound on US Highway 70, she advised there was another accident on the right in front of her & an object fell from one of the vehicles involved (US Army veh) in that collision up ahead.  She advised that she swerved on the shoulder on the North side of the road.  That is when my client Luis Alberto Pena collided with veh #1.  My client stated that he always gives himself room between vehicles, since the other collision occurred veh #1 swerved into his lane.

---

[1]      Mr. Pena was driving the vehicle, and Mr. Avery was a passenger.  See ECF No. 63-5 at 4.

ECF No. 58-1 at 1.  Similarly, Mr. Avery's "Basis of Claim" states:

> Vehicle # 1 (not my client) was traveling E. bound on US Highway 70, she advised there was another accident on the right in front of her & an object fell from one of the vehicles involved (US Army veh) in that collision up ahead.  She advised that she swerved on the shoulder on the North side of the road.  That is when my client Luis Alberto Pena collided with veh #1.  My client Mr. Avery was the passenger in vehicle #2.

ECF No. 58-4 at 1.  Mr. Pena's SF-95 states that the accident caused him pain in his neck, back, and right shoulder, ECF No. 58-1 at 1, while Mr. Avery's SF-95 states that the accident caused him pain in his lower back and left leg, ECF No. 58-4 at 1.  Both Plaintiffs' SF-95s state that: (1) the vehicle Mr. Pena was driving sustained front-end damage and was available for inspection at NAPA Auto Care at 1680 W. Amador Avenue in Las Cruces; (2) Ms. Jiminez witnessed the accident, and provides her address; and (3) each Plaintiff is claiming $20,000.00 for property damage and $5,000,000.00 for personal injuries.  ECF No. 58-1 at 1; ECF No. 58-4 at 1.  Mr. Pena's SF-95 also provides his insurance information.  ECF No. 58-1 at 2.

The next day, May 5, 2023, an Army Claims Examiner/Paralegal Specialist, Raymond Boceta, sent letters to Mr. Pena and Mr. Avery, acknowledging receipt of their respective SF-95s and requesting that each Plaintiff provide documents supporting their claims.  ECF Nos. 58-2, 58-5.  The letters provide Mr. Boceta's telephone number and an <u>incorrect</u> email address of raymond.j.bocet.civ@army.mil.  ECF Nos. 58-2, 58-5.  Mr. Boceta's actual email address is raymond.j.boceta.civ@army.mil; the email address provided in the May 5, 2023 letters omits the "a" at the end of Boceta.  <u>See</u> ECF Nos. 58-2, 58-5.

On September 28, 2023, Mr. Boceta sent follow-up letters to Plaintiffs' counsel via email stating that the Army had not received "any of the requested documentation, despite making follow

up requests by email on May 5, 2023 and August 30, 2023."[2]  See ECF Nos. 58-3, 58-6.  The September 28, 2023 letters further state that if the Army does not receive the requested documentation by October 27, 2023, Mr. Boceta would recommend that the Staff Judge Advocate evaluate Plaintiffs' claims "on the basis of the existing information which may result in a denial [of] the claim for failure to substantiate it under Army Regulation 27-20, paragraph 2-38."  ECF Nos. 58-3, 58-6.  The September 28, 2023 letters conclude: "You may mail the requested documentation to the following address: U.S. Army, Attn.: JAG (Mr. Boceta), Building 124 Crozier Street, Room 108, White Sands Missile Range, NM 88002, or you may email it to raymond.j.boceta.civ@army.mil office (575) 678-7374."  ECF Nos. 58-3, 58-6.  Thus, Mr. Boceta included the correct email address in his September 28, 2023 letters.  See ECF Nos. 58-3, 58-6.

On September 28, 2023, Plaintiffs' counsel attempted to send a demand letter on behalf of Mr. Pena to Mr. Boceta, but he used the incorrect email address provided in the May 5, 2023 letters. See ECF Nos. 63-5, 63-7.  Attached to Mr. Pena's demand letter were copies of the two New Mexico Uniform Crash Reports (one for each accident), medical records, and medical bills.  See Resp. at 4; ECF Nos. 63-5, 63-7.  Because these materials were emailed to an incorrect email address, the Army never received them.  See Reply at 2-3; see also Mot. at 4.

On February 22, 2024, Newt Hill, an attorney-advisor in the Army's Tort Claims Division, sent Plaintiffs' counsel a letter via certified mail with return receipt requested stating, in relevant part:

> Since we have not received responses to the letters we sent requesting evidence and other documentation (copies enclosed), including our latest letters dated September 28, 2023, please submit a statement of your intentions regarding the claims within 30 days.  Failure to respond will result in the presumption that the claims are abandoned. . . .

---

[2]    The August 30, 2023 follow-up letters do not appear to be in the record.

> Please note that even if you indicate you have not abandoned the claims, our investigation has revealed insufficient evidence that a U.S. Army employee was involved in the accident, and therefore the claims are not compensable under the Federal Tort Claims Act.

ECF No. 58-7.  The Army did not receive a response to the February 22, 2024 letter.  <u>See</u> Mot. at 5.

On April 3, 2024, Mr. Hill sent another, identical letter to Plaintiffs' counsel, again stating that the Army had not received the evidence and documentation requested in Mr. Boceta's letters, asking counsel to submit a statement of intentions regarding Plaintiffs' claims, warning that failure to respond will result in a presumption that the claims are abandoned, and indicating that the Army's investigation revealed insufficient evidence that an Army employee was involved the accident.  ECF No. 58-8.  The Army did not receive a response with evidence or documentation supporting Plaintiffs' claims or a statement of intentions from Plaintiffs.  <u>See</u> Mot. at 5.

On September 19, 2024, Plaintiffs' counsel attempted to send a demand letter on behalf of Mr. Avery to Mr. Boceta but again used the <u>incorrect</u> email address provided in the May 5, 2023 letters.  <u>See</u> ECF Nos. 63-6, 63-8.  Mr. Avery's demand letter describes his injuries and resulting medical bills.  <u>See</u> ECF No. 63-6.  Because these materials were emailed to an incorrect email address, the Army never received them.  <u>See</u> Reply at 2-3; <u>see also</u> Mot. at 5.

On September 26, 2024, Plaintiffs filed a Complaint in this Court asserting a claim for negligence against Defendants Vasquez and Jiminez (Count 1), and a claim for negligence against Mr. Rice and the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b),

2671-2680 (Count 2).[3]  ECF No. 1 ¶¶ 10, 21-31.  Count 2 alleges that Mr. Rice, an agent of the

United States,

> was careless, reckless, and negligent in this case in that he:
>
> 1[.]    Failed to timely apply the brakes to his vehicle in order to avoid causing a
>         collision when a reasonable person of ordinary prudence would not have so
>         failed under the same or similar circumstances.
>
> 2.      Failed to keep a proper lookout when a reasonable person of ordinary
>         prudence would not have so failed under the same or similar circumstances.
>
> 3.      Failed to take proper measures in controlling his vehicle.
>
> 4.      Failed to make a safe lane change.
>
> 5.      Failed to construct, load, secure or cover his load to prevent it from
>         dropping, sifting, leaking or otherwise escaping.

Id. ¶ 27.  Count 2 further alleges that Mr. Rice drove negligently in violation of N.M. Stat. Ann. §

66-7-317, which requires vehicles on multi-lane roadways to be "as nearly as practicable entirely

within a single lane and shall not be moved from such lane until the driver has first ascertained

that such movement can be made with safety."  Id. ¶ 29 (quoting N.M. Stat. Ann. § 66-7-317).

On February 7, 2025, the Government filed an Answer which asserts several affirmative

defenses, including that "[t]he Court lacks subject-matter jurisdiction over [Count 2] because it

was not administratively exhausted by Plaintiffs prior to filing suit, and over any claim not

administratively exhausted."  ECF No. 26 at 6 (citing 28 U.S.C. § 2675(a)).

On August 20, 2025, the Government filed the instant Motion to Dismiss for Lack of

Subject Matter Jurisdiction.  ECF No. 58.  On September 3, 2025, Plaintiffs filed a Response to

which they attached, inter alia, the September 28, 2023 demand letter and documentation Plaintiffs'

---

[3]      On February 7, 2025, the Government filed a Notice of Substitution of Party, ECF No. 25, and Mr.
Rice was terminated from this case pursuant to 28 U.S.C. § 2679(d)(1).

counsel sent on behalf of Mr. Pena to Mr. Boceta's incorrect email address, ECF Nos. 63, 63-5, 63-7, and the September 19, 2024 email and demand letter Plaintiffs' counsel sent on behalf of Mr. Avery to Mr. Boceta's incorrect email address, ECF No. 63-6, 63-8.  On September 16, 2025, the Government filed a Reply acknowledging, for the first time, that Plaintiffs apparently attempted to respond to the Army's request for evidence and documentation supporting their claims, but the Army did not receive the demand letters and supporting documentation because they were sent to the incorrect email address provided in Mr. Boceta's May 5, 2023 letters.  ECF No. 65 at 2-3.  The Government argues that, in any event, the supplemental information and evidence Plaintiffs attempted to provide Mr. Boceta is insufficient to satisfy the exhaustion requirement.  See id. at 4-11.  Because Plaintiffs did not have an opportunity to address the representations and arguments raised in the Reply, the Court ordered Plaintiffs to file a Surresponse, ECF No. 67, which Plaintiffs filed on September 26, 2025, ECF No. 68.

## II.    Legal Standard

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Off. of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994).  "Because the jurisdiction of federal courts is limited, 'there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.'"  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999) (quoting Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991)).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  Id. (quoting Basso v. Utah Power & Light Co., 495 F.2d 906, 909

(10th Cir. 1974)).  See also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).  A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true."  Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995) abrogated on other grounds by Cent. Green Co. v. United States, 531 U.S. 425, 437 (2001).  "In reviewing a factual attack," as here, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends, which does not allow a reviewing court to presume the truthfulness of the complaint's factual allegations."  Pueblo of Jemez v. United States, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (internal quotation marks and citation omitted).  "Instead, it gives the court wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  Id. (internal quotation marks and citation omitted).

## III.  Discussion

The Government argues that the Court lacks subject matter jurisdiction over Count 2 due to Plaintiffs' failure to exhaust their administrative remedies before filing a lawsuit under the FTCA.  Mot. at 5-13.  It argues that the Complaint's allegations against the Government are "vastly different than the factual basis presented in Plaintiffs' administrative claims."  Id. at 9; see also id. at 12-13.

Plaintiffs argue that the information contained in their SF-95s was sufficient "to provide the Army with the statutorily required notice to enable the Army to begin its own investigation into the incident[,]" Resp. at 6; and even if the SF-95s did not provide sufficient notice, the information provided with their demand letters was sufficient to satisfy the exhaustion requirement, id. at 6-8.

In its Reply, the Government states that it never received the demand letters and documents attached thereto, ECF No. 65 at 3, 5, but even if it is deemed to have received these materials due to Mr. Boceta misspelling his email address in the May 5, 2023 letters to Plaintiffs, "those augmented claims would still fail to notify the Army of the newly minted claims advanced in Plaintiffs' Complaint[,]" id. at 5. Specifically, it argues that the New Mexico Uniform Crash Reports "do not materially differ from the allegation in Plaintiffs' administrative claims" and "[n]either the Plaintiffs' administrative claims nor the police reports contain any evidence or allegation of negligent driving or other negligence on the part of the government employee." Id. at 6; see also id. at 9 ("[N]either Plaintiffs' SF-95s nor the police reports that they subsequently attempted to provide to the Army contain any evidence, indication, or allegation that that the driver of the Army vehicle was negligent in any form or fashion, let alone notice of the specific allegations in the Complaint . . . .").

In their Surresponse, Plaintiffs maintain that the information provided in their initial SF-95s was sufficient to satisfy the FTCA's exhaustion requirement, ECF No. 68 at 4-5, and the mailbox rule should apply to the demand letters and supporting documentation because "the Government's error prevented actual receipt" and "the government cannot rely on its own mistake to argue the Plaintiffs failed to exhaust administrative remedies[,]" id. at 7.

Under the doctrine of sovereign immunity, courts lack subject matter jurisdiction over actions against the United States absent a Congressional waiver. See FDIC v. Meyer, 510 U.S.

471, 475 (1994).  In the FTCA, Congress waived the United States' sovereign immunity for certain

claims, including those "caused by the negligent or wrongful act or omission of any employee of

the Government while acting within the scope of his office or employment," so long as a plaintiff

alleges six prerequisite statutory elements.  28 U.S.C. § 1346(b)(1).  To be actionable under §

1346(b), a claim must be:

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of
> property, or personal injury or death [4] caused by the negligent or wrongful act or
> omission of any employee of the Government [5] while acting within the scope of
> his office or employment, [6] under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with the law of the
> place where the act or omission occurred.

Brownback v. King, 592 U.S. 209, 212 (2021) (alteration in original) (quoting Meyer, 510 U.S. at

477).  "The FTCA does not itself create a substantive cause of action against the United States;

rather, it provides a mechanism for bringing a state law tort action against the federal government

in federal court.  Thus, the extent of the government's liability under the FTCA is determined by

state law."  Clark v. United States, 234 F. Supp. 3d 1127, 1135 (D.N.M. 2014) (internal quotation

marks and citations omitted), aff'd, 695 F. App'x 378 (10th Cir. 2017); see also Burge v. United

States, Civ. No. 10–0069 MV/WDS, 2012 WL 1450062, at *3 (D.N.M. Mar. 27, 2012).  "The

FTCA's limited grant of subject matter jurisdiction hinges on whether a private person could be

subject to state law liability under similar factual circumstances as those alleged against

government actors."  Hammonds v. United States, Civ. No. 16-1230 GBW/KRS, 2018 WL

1399183, at *3 (D.N.M. Mar. 19, 2018) (citing Clark, 234 F. Supp. 3d at 1135).

Congress limited the FTCA's waiver of sovereign immunity by requiring FTCA claimants

to exhaust their administrative remedies before commencing a lawsuit against the United States.

28 U.S.C. § 2675(a); see also McNeil v. United States, 508 U.S. 106, 113 (1993).  The FTCA's

exhaustion requirement exists to allow agencies to conduct an investigation and provide them the opportunity to "settle disputes before defending litigation in court."  Lopez v. United States, 823 F.3d 970, 976 (10th Cir. 2016) (quoting Smoke Shop, LLC v. United States, 761 F.3d 779, 786 (7th Cir. 2014)).

To satisfy the exhaustion requirement, (1) a claimant must present an administrative claim to the appropriate federal agency ("presentment"),[4] and (2) the agency must actually or constructively deny the claim.  28 U.S.C. § 2675(a); Barnes v. United States, 776 F.3d 1134, 1139 (10th Cir. 2015); Lopez, 823 F.3d at 976.  An administrative claim is

> deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident[.]

28 C.F.R § 14.2(a).  Thus, an administrative claim must include: "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  Est. of Trentadue ex rel. Aguilar v. United States, 397 F.3d. 840, 852 (10th Cir. 2005) (internal quotation marks and citations omitted).  The written statement of the claimant's injury is sufficient when it "serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct."  Id. (quoting Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000)).  The statement "should give notice of the

---

[4]    In this Order, the Court refers variously to three interrelated requirements under the FTCA: exhaustion, presentment, and notice.  As used in this Order, "exhaustion" refers to 28 U.S.C. § 2675(a)'s overarching requirement that before filing a lawsuit under the FTCA, (1) a claimant must first "present[] the claim to the appropriate Federal agency" and (2) "his claim shall have been finally denied by the agency . . . ."  "Presentment" refers to the first element of exhaustion—i.e., the claimant's obligation to present an administrative claim to the appropriate federal agency.  28 U.S.C. § 2675(a).  "Notice" refers to the whether the claim presented to the appropriate federal agency sufficiently describes the facts and circumstances giving rise to the claimant's injury to enable the agency to "investigate the possibility of particular (potentially tortious) conduct."  Est. of Trentadue ex rel. Aguilar v. United States, 397 F.3d. 840, 852 (10th Cir. 2005) (internal quotations and citations omitted).

underlying facts and circumstances 'rather than the exact grounds'" of the FTCA action.  Staggs v. United States ex rel. Dept. of Health and Hum. Servs., 425 F.3d 881, 884 (10th Cir. 2005) (quoting Trentadue, 397 F.3d at 853).  For the purposes of exhaustion, the administrative claim asserted "encompasses any cause of action fairly implicit in the facts."  Lopez, 823 F.3d at 976 (quotation marks and citation omitted).  "[C]ourts should liberally construe the universe of facts that the" administrative claim provides, but should not "augment those facts to conform to the claimant's subsequent civil complaint."  Benally v. United States, 735 F. App'x 480, 485 (10th Cir. 2018).

"The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim[.]"[5]  28 U.S.C. § 2675(a); see also Barnes, 776 F.3d at 1139 ("[T]o meet the threshold requirement of administrative exhaustion, plaintiffs must either (1) have their administrative claims finally denied by the relevant federal agency; or (2) if the agency fails to act on their administrative claims within six months of presentment, they may thereafter deem the claims (constructively) denied.").

The exhaustion requirement is "jurisdictional and cannot be waived."  Bradley v. United States ex rel. Veterans Admin., 951 F.2d 268, 270 (10th Cir. 1991) (citation omitted).  "Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed."  Id. (citation omitted).  However, the notice requirement "should not be interpreted inflexibly."  Trentadue, 397 F.3d at 853.

---

[5]    The Army concedes that it "did not make a final disposition of Plaintiffs' claims within six months after receiving their SF-95s."  Reply at 3.

For the reasons that follow, the Court finds that: (1) the demand letters and documentation that Plaintiffs' counsel emailed to Mr. Boceta's incorrect email address on September 28, 2023 and September 19, 2024 were not presented to the Army for purposes of the FTCA's exhaustion requirement because they were not received by the Army; but (2) the information provided in Plaintiffs' SF-95s alone satisfy the FTCA's presentment requirement. And because the Army failed to take action on the Plaintiffs' SF-95s within six months of presentment, resulting in a constructive denial of Plaintiffs' claims, Plaintiffs have satisfied the exhaustion requirement.

      **a.**    **The information and evidence included with the demand letters Plaintiffs' counsel emailed to Mr. Boceta's incorrect email address cannot be considered part of Plaintiffs' claims because it was not received by the Army.**

As mentioned above, "[t]he FTCA requires as a prerequisite to suit that the 'claimant shall have first presented the claim to the appropriate Federal agency.'" <u>Moya v. United States</u>, 35 F.3d 501, 503 (10th Cir. 1994) (quoting 28 U.S.C. § 2675(a)). An administrative claim is

> deemed to have been presented when a Federal agency <u>receives</u> . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident[.]

28 C.F.R. § 14.2(a) (emphasis added).

Here, there is no dispute that the Army timely received both Plaintiffs' SF-95s. The question is whether the Army is deemed to have received the demand letters and documentation Plaintiffs' counsel emailed to the incorrect email address provided in Mr. Boceta's May 5, 2023 letter.

Strictly construing the FTCA's waiver of sovereign immunity, as the Court must, the Court finds that the presentment requirement is not satisfied until the agency <u>receives</u> notice of the claim, not when it is mailed or emailed to the agency. See <u>Bailey v. United States</u>, 642 F.2d 344, 346-47

13

(9th Cir. 1981); see also Moya, 35 F.3d at 504; Anderberg v. United States, 718 F.2d 976, 977 (10th Cir. 1983); Cooke v. United States, 918 F.3d 77, 78 (2d Cir. 2019) ("[T]he mailbox rule does not apply to FTCA claims.").  Because the Army never received the demand letters and documents Plaintiffs' counsel sent to the incorrect email address, the information and evidence contained therein were not presented to the Army for purposes of the FTCA's exhaustion requirement.  See Bailey, 642 F.2d at 346-47.

This conclusion is exemplified by the Ninth Circuit' opinion in Bailey.  In Bailey, three individuals were injured—one fatally—by an explosion at an Air Force base.  642 F.2d at 345. The same law firm represented the two surviving plaintiffs and the heirs of the decedent in asserting tort claims against the United States for alleged negligence in connection with the explosion.  Id.  The attorneys timely mailed administrative claims to the Air Force on behalf of the two surviving plaintiffs, and "[r]eceipt of these claims was promptly acknowledged by the claims officer in charge."  Id.  However, because a personal representative had not yet been appointed to represent the decedent, no administrative claim was initially filed on behalf of his heirs, "although the attorneys did notify the claims officer that such a claim would be forthcoming and that they would be representing the [decedent's] heirs."  Id.

Over the next thirteen months, the attorneys sent the Air Force several letters and documents regarding the decedent's claim.  See id. at 345-46.  First, the attorneys sent the Air Force the decedent's autopsy report and wage statement.  Id.  A week later, the claims officer requested additional information and "noted that the Air Force had not yet received a claim from [the decedent's] estate but that it was his understanding that a claim would be filed once a personal representative was appointed."  Id. at 346.  Two months later, the attorneys sent additional information, including the decedent's funeral bills.  Id.  "The claims officer acknowledged this

letter and informed the attorneys that when [the decedent's] administrative claim and certain medical information about [one of the surviving plaintiff's] were received, agency files on the three claims would be complete." Id.

Thereafter, a conservator was appointed and "the attorneys mailed the claim forms for [the decedent] to the Air Force claims officer." Id. However, the Air Force never received the decedent's claims forms. Id.

Nine months later, when the Air Force denied one of the surviving plaintiff's claims, the attorneys asked about the status of the decedent's claims and were told that the Air Force had no record of receiving a claim from the decedent's estate. Id. "The attorneys immediately sent copies of the claim, but the Air Force refused to consider it for failure to file within two years of the accident as required by 28 U.S.C. §§ 2401(b), 2675(a) and regulations implementing these statutory provisions, 28 C.F.R. § 14.2(a); 32 C.F.R. § 842.105(a)(1)." Id.

The decedent's heir's then filed a lawsuit under the FTCA, and the district court dismissed the claims for lack of subject matter jurisdiction. Id. The decedent's heirs appealed and the Ninth Circuit affirmed, explaining:

> Here, the claim was not "presented," i. e., "received" by the agency, as the statute and the regulation require, within two years. Yet [the decedent's heirs], in the face of these facts and the foregoing authorities, would have us read an exception into the statute and the regulations because of the particular circumstances in this case.
>
> It is always tempting to try to extend statutory time limits in favor of those who have failed to comply with them. Judges naturally prefer that a person claiming to be injured shall have a chance to have his claim heard and decided on its merits. However, assuming, without deciding, that we may excuse literal compliance with the procedural requirements of the Act in a case in which unusual circumstances exist, this is not such a case.
>
> Plaintiffs and their counsel do not claim ignorance of the statutory and regulatory requirements. They knew that a claim was required. They knew when it must be presented. The regulation gave them notice that a claim is not presented until it is

received. Counsel had presented two other claims, arising from the same incident, and the Air Force had promptly (within a week) acknowledged receipt of those claims. Counsel mailed plaintiffs' claim some eight months before the statutory deadline. They did not send it by certified or registered mail, a well known and easy way to establish receipt of the claim by the Air Force. They received no acknowledgment of the claim, a fact that should have suggested that the claim had not been received, but had gone astray, in view of the prompt acknowledgment of the other claims. They were under an obligation to their clients to see that the claim was received. Yet thereafter, for the better part of eight months, they did nothing at all. Apparently it was of no moment to them whether the claim was received. They did not inquire until after the two year period had run, and then only when they were awakened by a denial of one of their other claims. We do not think that we should now stretch and distort the statute and the regulation to rescue counsel from their own carelessness.

Id. at 346-47. The Court agrees with this analysis and adopts it. See Moya, 35 F.3d at 504 (citing Bailey with approval in holding that (1) a request for reconsideration of an agency's denial of an administrative tort claim is "presented" when it is received by the agency, not when it is mailed to the agency, and (2) "[i]t is the plaintiff's burden to establish the proper agency's receipt of the request for reconsideration"); Anderberg, 718 F.2d at 977 (holding a request for reconsideration of the denial of an administrative tort claim is presented when it is received by the agency); Cooke v, 918 F.3d at 82 (holding that "the mere mailing of a notice of claim does not satisfy the FTCA's presentment requirement" and that "actual receipt is required"); Drazan v. United States, 762 F.2d 56, 58 (7th Cir. 1985) ("[M]ailing is not presenting; there must be receipt"); Stancomb v. United States, 121 F. Supp. 2d 1019, 1020-21 (E.D. Tex. 2000) ("It is the plaintiff's burden to prove receipt by the appropriate Federal agency; merely mailing the claim will not suffice.").

The relevant facts of this case are analogous to Bailey. Plaintiffs timely submitted their SF-95s to the Army on May 4, 2023. See Pena SF-95, ECF No. 58-1; Avery SF-95, ECF No. 58-4. The very next day—May 5, 2023—the Army, through Mr. Boceta, confirmed receipt of

Plaintiffs' SF-95s and requested additional documents supporting their claims.  ECF Nos. 58-2, 58-5.

On September 28, 2023, Mr. Boceta sent Plaintiffs' counsel follow-up letters via email stating that the Army had not received any of the documentation requested in the May 5, 2023 letters.  ECF Nos. 58-3, 58-6.  The September 28, 2023 letters state that if the Army does not receive the requested documentation by October 27, 2023, Mr. Boceta would recommend that the Staff Judge Advocate evaluate Plaintiffs' claims "on the basis of the existing information which may result in a denial [of] the claim for failure to substantiate it under Army Regulation 27-20, paragraph 2-38." ECF Nos. 58-3, 58-6.  The September 28, 2023 letters also provide two addresses to which Plaintiffs' counsel could submit the documentation—a physical address at White Sands Missile Range and Mr. Boceta's <u>correct</u> email address—and also provides Mr. Boceta's telephone number.  ECF Nos. 58-3, 58-6.

On September 28, 2023, Plaintiffs' counsel sent a demand letter on behalf of Mr. Pena, along with copies of the New Mexico Uniform Crash Reports, medical records, and medical bills, to Mr. Boceta at the incorrect email address.  <u>See</u> ECF Nos. 63-5, 63-7.  Plaintiffs' counsel did not send them "by certified or registered mail, a well known and easy way to establish receipt of the claim by the" Army.  <u>Bailey</u>, 642 F.2d at 347.  Of course, the Army did not receive Mr. Pena's materials, a fact Plaintiffs' counsel should have been alerted to when he received no acknowledgment from Mr. Boceta, "in view of the prompt acknowledgment" of the SF-95s.  <u>Id.</u>

On February 22, 2024, Newt Hill, an attorney-advisor in the Army's Tort Claims Division, sent Plaintiffs' counsel a letter via certified mail with return receipt requested stating, in part:

> Since we have not received responses to the letters we sent requesting evidence and other documentation (copies enclosed), including our latest letters dated September 28, 2023, please submit a statement of your intentions regarding the claims within

30 days.  Failure to respond will result in the presumption that the claims are abandoned. . . .

ECF No. 58-7.  At this point, it should have been crystal clear to Plaintiffs' counsel that the Army had not received the items emailed to Mr. Boceta on September 28, 2023 in support of Mr. Pena's claims.  Inexplicably, Plaintiffs' counsel did not respond to Mr. Hill's February 22, 2024 letter or otherwise attempt to confirm receipt of Mr. Pena's demand letter and supporting documentation. See Mot. at 5.

On April 3, 2024, Mr. Hill sent another, identical letter to Plaintiffs' counsel.  ECF No. 58-8.  Although Plaintiffs' counsel was "under an obligation to [Mr. Pena] to see that the claim was received[,]" Bailey, 642 F.2d at 347, he did not respond to Mr. Hill's April 3, 2024 letter, see Mot. at 5.  Indeed, he apparently "did nothing at all."  Bailey, 642 F.2d at 347.

More than five months later, on September 19, 2024, and nearly a year since his last communication, Plaintiffs' counsel sent a demand letter on behalf of Mr. Avery to Mr. Boceta at the incorrect email address provided in the May 5, 2023 letters, see ECF Nos. 63-6, 63-8, even though by now it should have been obvious that the Army was not receiving material sent to that email address.  Of course, because Mr. Avery's demand letter was sent to the wrong email address, the Army never received it.  See Reply at 2-3; see also Mot. at 4-5.  Although counsel did not receive an acknowledgment from the Army, counsel did not bother to pick up the phone to call Mr. Boceta to confirm receipt of Mr. Avery's demand letter.  Instead, seven days later he filed this lawsuit.  ECF No. 1.

Because a claim is not presented to an agency until the agency receives it, the demand letters and documentation Plaintiffs' counsel emailed to the Army on September 28, 2023 and

18

September 19, 2024 were not presented to the Army as part of Plaintiffs' claims.  See Bailey, 642 F.2d at 346-47; see also Moya, 35 F.3d at 504; Anderberg, 718 F.2d at 977.

The Court now turns to whether the SF-95s that the Army did receive satisfy the FTCA's exhaustion requirement.

> **b.    The SF-95s the Army received in May 2023 satisfy the FTCA's presentment requirement.**

As previously stated, an administrative claim must include: "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  Trentadue, 397 F.3d. at 852 (quotation marks and citation omitted).  The written statement of the claimant's injury is sufficient when it "serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct."  Id. (quoting Dynamic Image, 221 F.3d at 40).  The statement must "give notice of the underlying facts and circumstances 'rather than the exact grounds'" of the FTCA action.  Staggs, 425 F.3d at 884 (quoting Trentadue, 397 F.3d at 853).  For the purposes of exhaustion, the administrative claim asserted "encompasses any cause of action fairly implicit in the facts."  Lopez, 823 F.3d at 976 (citation omitted).

Plaintiffs' SF-95s state that a U.S. Army vehicle was involved in an automobile accident on Friday, July 6, 2023 at 12:46 PM while travelling eastbound on U.S. Highway 70.  ECF Nos. 58-1 at 1, 58-4 at 1.  They further state that "an object fell from" the U.S. Army vehicle.  ECF Nos. 58-1 at 1, 58-4 at 1.  They state that Plaintiffs were involved in a second, subsequent accident when their vehicle collided with another vehicle that "swerved on the shoulder[.]"  ECF Nos. 58-1 at 1, 58-4 at 1.  A reasonable inference from these facts is that the vehicle "swerved" to avoid the "object" that "fell" from the U.S. Army vehicle.  See ECF Nos. 58-1 at 1, 58-4 at 1.  Plaintiffs' SF-

95s also state that their vehicle sustained "[f]ront end damage" and that the vehicle may be inspected at the NAPA Auto Care location at 1680 W. Amador Avenue in Las Cruces, New Mexico. Nos. 58-1 at 1, 58-4 at 1.  Mr. Pena's SF-95 reflects that he suffered pain in his neck, back, and right shoulder as a result of the accident, ECF No. 58-1 at 1, and Mr. Avery's SF-95 reflects that he suffered pain in his lower back and left leg, ECF No. 58-4 at 1. Each SF-95 also names Blanca Jiminez as a witness and gives her contact information.  ECF Nos. 58-1 at 1, 58-4 at 1.

The Court finds that Plaintiffs' SF-95s gave the Army sufficient notice that it should investigate the possibility of particular, potentially tortious conduct.  It was given notice of the underlying facts and circumstances, including the exact date, time, and general location of an automobile accident involving a U.S. Army vehicle.  A fair implication in the facts provided in the SF-95s is that the federal employee who was driving the U.S. Army vehicle may have been driving negligently (because that is how many automobile accidents occur) and/or negligently failed to secure his load (because otherwise an object would not have fallen from it).  See Benally, 735 F. App'x at 485 (instructing that "courts should liberally construe the universe of facts that the FTCA claimant provides").  The Army was also given notice that Plaintiffs suffered injuries and property damage in a subsequent accident that may have been precipitated by its employee's negligence.  It was also given the exact address where Plaintiffs' damaged vehicle was being serviced and the name and contact information of a witness to the accident.

Although Plaintiffs' counsel probably should have provided more information than the bare minimum—and definitely should have ensured that the demand letters and supporting documentation were received by the Army, see Section III(a), supra—the information he did provide in the SF-95s was sufficient to serve due notice that the Army should investigate the possibility that one of its employees negligently caused Plaintiffs' personal injuries and property

damage, as alleged in Count 2.  <u>See</u> <u>Trentadue</u>, 397 F.3d at 852-53 (holding that the plaintiffs'

administrative claim for intentional infliction of emotional distress (IIED) based on prison

officials' attempt to conceal the manner of the decedent's death was sufficient to satisfy the notice

requirement for the complaint's IIED claim which was based on other conduct by prison officials

because the "administrative claim provided notice that DOJ should investigate the prison officials'

conduct").

Finally, both Plaintiffs' SF-95s claim a sum certain in damages: $5,000,000 in personal

injuries and $20,000 in property damage.  ECF Nos. 58-1 at 1, 58-4 at 1.  Therefore, the Court

finds that Plaintiffs satisfied the FTCA's presentment requirement when the Army received their

SF-95s.  <u>See</u> <u>Sitivong v. United States</u>, Case No.: 2:22-cv-00169-APG-BNW, 2022 WL 22596109,

at *1-2 (D. Nev. Dec. 19, 2022) (rejecting the Government's argument that the plaintiff failed to

exhaust administrative remedies by failing to respond to the FBI's request for more information

regarding her administrative claim, and finding that the plaintiff "provided the minimal notice

required to satisfy the jurisdictional obligation to exhaust administrative remedies" by submitting

an SF-95 that, inter alia, "identified her name and address, the date of the accident, the name of

the federal employee involved, how she asserts the accident occurred, why the federal employee

was at fault, and that she suffered bodily injuries as a result[,]" stating that her vehicle was a "total

loss" and giving "the address where the vehicle was located if the agency wanted to inspect it[,]"

and stating a sum certain for damages); <u>State Farm Mut. Auto. Ins. Co. v. United States</u>, 326 F.

Supp. 2d 407, 413-14 (E.D.N.Y. 2004) (finding that an administrative claim that provided the Navy

notice of "a motor accident caused by the negligence of the Navy's employee, injuries sustained

by the plaintiff's subrogor, and a request for a specific sum of damages" was sufficient to satisfy

the FTCA's presentment requirement).

And because there is no dispute that the Army is deemed to have constructively denied Plaintiffs' administrative claims by failing to make a final disposition thereon within six months after receiving the SF-95s, see Reply at 3, the Court finds that Plaintiffs exhausted their administrative remedies prior to filing this lawsuit, see Barnes, 776 F.3d at 1139 ("[T]o meet the threshold requirement of administrative exhaustion, plaintiffs must either (1) have their administrative claims finally denied by the relevant federal agency; or (2) if the agency fails to act on their administrative claims within six months of presentment, they may thereafter deem the claims (constructively) denied.").

## IV. Conclusion

Therefore, it is **HEREBY ORDERED** that the United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 58, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE